NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0010n.06

Case No. 21-1241

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 05, 2022
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PETER ARTHUR WATKINS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

---

Before: SUTTON, Chief Judge; GUY and DONALD, Circuit Judges.

SUTTON, Chief Judge. Police officers found a semi-automatic rifle in the basement of the residence of Peter Watkins, who was on parole at the time. The discovery led to a felon-in-possession conviction and a sentence of 100 months. Watkins appeals his conviction and sentence. Because the district court did not abuse its discretion in declining to let Watkins withdraw his guilty plea and because the sentence was procedurally reasonable, we affirm.

I.

In 2010, a Michigan state court convicted Watkins of drug delivery or manufacturing, and the State released him on parole one year later. In 2019, police officers accompanied a parole officer on a home visit to Watkins' house. While there, they found a semi-automatic rifle and 50 rounds of ammunition in Watkins' basement. He told police that the gun was someone else's

but admitted that he had handled it and said he thought he could store it in his house after his parole ended. A federal indictment for being a felon in possession of a firearm and ammunition followed.

Watkins considered various defense strategies in jail, not all of them legitimate. In one recorded call, his girlfriend offered to tell police that the gun was hers, but Watkins assured her that he did not want her to take the gun charge and that he was "going to take care of it." R.58 at 5. On a recorded call the following day, Watkins' girlfriend told him she had gone to see a "dude" about "that gun," but that person said there was nothing they could do. *Id.* She said, "You told me to find someone to come in there and say it was theirs," and Watkins responded "Yes." *Id.*

Watkins moved to suppress the evidence found in his home and his statements to police during the search on the grounds that police lacked reasonable suspicion to search his home and failed to inform him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court denied his motion. Watkins entered an unconditional guilty plea. A magistrate judge conducted a plea colloquy, found that Watkins made his plea knowingly and voluntarily, and confirmed that Watkins had discussed the application of the sentencing guidelines with his attorney. The district court accepted his plea.

A little over one month after the district court accepted his plea, the probation office released its initial presentencing report, which proposed a guidelines range of 120 to 125 months. Eleven days later, Watkins sent a letter to the district court asking to withdraw his guilty plea and have new counsel appointed. After a hearing, the district court denied Watkins' motion. The district court sentenced Watkins to 100 months.

## II.

*Guilty plea.* Watkins' direct criminal appeal rises or falls based on whether we permit him to unwind his decision to plead guilty. A criminal defendant may withdraw his guilty plea before

sentencing where he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We review a district court's decision to deny such a motion for abuse of discretion. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003).

We consider seven non-exclusive factors in determining whether to permit a defendant to withdraw his plea: (1) the time between the plea and the motion to withdraw; (2) the explanation for the defendant's change of heart; (3) the existence of any claim of innocence; (4) the circumstances of the guilty plea; (5) the defendant's background; (6) the defendant's experience with the criminal justice system; and (7) the prejudice to the government if the motion is granted. *United States v. Quinlan*, 473 F.3d 273, 276–77 (6th Cir. 2007). Each factor deserves a turn.

1. *Length of delay*. Watkins waited 71 days after entering a guilty plea before reversing course. That substantial delay undercuts his motion. A 75-day delay "alone," we have held, strongly supports the denial of a motion to withdraw a guilty plea. *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004); *see also United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (noting that a delay of 67 days strongly favored the district court's denial).

2. *Reason for delay*. The most plausible reason for Watkins' decision to withdraw his plea is that he received the presentencing report and realized his sentence would be longer than he had hoped. Watkins moved to withdraw his guilty plea just 11 days after the probation office released the report. But given the reality that he confirmed at the plea colloquy that he spoke to his attorney about the application of the sentencing guidelines to his case, this factor does little for his cause.

3. *Assertion of innocence*. Watkins has not claimed that he is innocent of the felon-in-possession charge at any point. He admitted to police that he handled the rifle stored in his basement, and he conceded the factual basis for the possession charge in his plea colloquy. Even now, he does not claim innocence.

4. *Circumstances underlying the plea.* We often look to a defendant's statements at his plea colloquy in judging the circumstances surrounding a guilty plea, and that transcript does not offer any good explanation for permitting a withdrawal. *See Quinlan*, 473 F.3d at 278. Watkins confirmed that sufficient evidence existed to convict him of being a felon in possession if he went to trial, that he had discussed the sentencing guidelines with his attorney, and that he freely and voluntarily chose to plead guilty.

5. *Defendant's background.* At the time of his plea, Watkins was a 39-year-old man who had completed his GED. Nothing about his nature or background would prevent him from understanding his plea. Individuals with the equivalent of a high school education do not raise red flags with respect to this consideration. *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012); *United States v. Matthews*, 745 F. App'x 622, 623 (6th Cir. 2018).

6. *Prior experience with the criminal justice system.* Watkins had extensive experience with the criminal justice system, having been convicted of multiple crimes in the past. He had previously pleaded guilty to state narcotics manufacture-or-delivery charges involving multi-year sentences, making him well-acquainted with the tradeoffs in a guilty plea.

7. *Prejudice to the government.* We need not examine whether withdrawal would prejudice the government. The prosecution does not need to demonstrate prejudice if the defendant, as just shown, has not established a fair and just reason for withdrawing his plea based on the first six factors. *See United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987).

In attempting to counter this conclusion, Watkins raises a claim of ineffective assistance of counsel. But we have a steady custom of requiring defendants to raise those claims in § 2255 petitions. *See Quinlan*, 473 F.3d at 280. We see no reason to change course in this case. Watkins separately challenges features of the district court's resolution of his suppression motion. But a

valid, unconditional guilty plea forecloses antecedent constitutional claims such as those Watkins raised in his suppression motion. *See Class v. United States*, 138 S. Ct. 798, 803–05 (2018); *United States v. Abdulmutallab*, 739 F.3d 891, 904–05 (6th Cir. 2014).

*Sentencing appeal*. Watkins challenges the district court's enhancements for obstruction of justice and prior controlled-substance convictions on the grounds that they were procedurally unreasonable. Adequate process, as one might expect, is the bellwether of a procedural reasonableness claim. "The court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

The district court correctly enhanced Watkins' sentence for obstruction of justice. While our circuit has not been consistent on whether we review this enhancement with fresh eyes or for clear error, *see United States v. Thomas*, 933 F.3d 605, 608–09 (6th Cir. 2019), we need not decide the standard of review because Watkins' procedural unreasonableness challenge fails either way.

The sentencing guidelines tell district courts to enhance a defendant's offense level by two levels where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The enhancement applies if a defendant attempts to suborn perjury, which includes situations in which a defendant asks someone else, directly or through an intermediary, to claim ownership of an illegally possessed firearm. *See United States v. Amerson*, 886 F.3d 568, 578–79 (6th Cir. 2018); *United States v. Huntley*, 530 F. App'x 454, 457–58 (6th Cir. 2013). The recorded call sufficed for the district court to conclude

that Watkins had asked his girlfriend to find someone who would take responsibility for ownership of the gun.

Watkins argues that, because the government could not produce the call in which he initially asked his girlfriend to find someone to take responsibility for the gun, insufficient evidence showed that he willfully obstructed justice. But the district court legitimately inferred that Watkins attempted to elicit perjury based on the evidence of a call in which his girlfriend said, "You told me to find someone to come in there and say it was theirs," and he responded, "Yes." R.58 at 5.

Watkins next argues that some of his prior convictions should not count as controlled-substance offenses. But the claim runs into contrary circuit precedent. In *United States v. Thomas*, we held that convictions under the Michigan drug-delivery criminal statutes qualify as controlled-substance offenses. 969 F.3d 583, 585 (6th Cir. 2020) (per curiam).

We affirm.