NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0441n.06

No. 23-5753

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 01, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| DEKEILON MARQUEL JOHNSON, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
|  | ) | |

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Dekeilon Johnson robbed a bank in Memphis, Tennessee at gunpoint. After he pleaded guilty, the Probation Office recommended that he receive a sentencing enhancement as a career offender due to two prior Tennessee convictions for the possession of marijuana with the intent to manufacture, sell, or distribute. At the time of those convictions, both the federal and Tennessee drug schedules included "hemp" within the definition of "marijuana" for the purposes of defining a controlled-substance offense. Both schedules were later amended to exclude hemp from the definition prior to Johnson's sentencing for the bank robbery. Johnson argued at sentencing that he was not eligible for the career-offender enhancement because of those amendments and argued for a downward variance based on changing views regarding marijuana. But because we have already adopted a time-of-conviction rule regarding the prior controlled-substances offenses, and because the district court did not abuse

its discretion in imposing a bottom-of-the-Guidelines sentence, Johnson's arguments fail to pass muster.

We **AFFIRM** the judgment of the district court.

## I.  FACTUAL BACKGROUND

### A.  Johnson's Armed Bank Robbery

On October 20, 2017, Johnson, along with at least one accomplice, committed an armed robbery at Regions Bank in Memphis, Tennessee.  R. 81 (Final PSR at ¶ 9) (Page ID #154–55). While two security guards were reloading an ATM machine at Regions Bank from an armored vehicle, Johnson approached and pulled a handgun on the guard handling the transfer of cash from the armored vehicle into the ATM.  *Id.*  The guard, who was armed, produced his own handgun, and the two exchanged fire, although neither was injured.  *Id.*  While the guard was reloading his handgun, Johnson grabbed a cash cassette holding $50,000 and fled.  *Id.*  After a lengthy investigation, law enforcement linked Johnson to the robbery via DNA analysis.  *Id.* at ¶¶ 13, 19. An FBI agent submitted a criminal complaint on March 12, 2021, and an arrest warrant was issued that day.  R. 3 (Complaint at 1) (Page ID #3), R. 4 (Arrest Warrant at 1) (Page ID #8).

### B.  The Proceedings Below

A grand jury indicted Johnson on counts of aiding and abetting bank robbery and the use, carrying, brandishing, and discharging of a firearm during a bank robbery in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c), respectively.  R. 7 (Indictment at 1–2) (Page ID #21–22).  After initially pleading not guilty, R. 16, Johnson entered an open plea of guilty to both counts of the indictment on March 21, 2023.  R. 75.

In preparation for Johnson's sentencing, the Probation Office prepared a presentence investigation report (PSR) in which it determined that Johnson qualified for a sentencing enhancement as a career offender. R. 81 (Final PSR at ¶¶ 36) (Page ID #158–59). Specifically, the Probation Office determined that Johnson qualified as a career offender under U.S.S.G. § 4B1.1because, as required by that provision, (1) he was at least 18 years old at the time of the instant offense, (2) the instant offense was a felony involving a crime of violence; and (3) he had at least two prior felony convictions for either a crime of violence or a controlled substance offense. *Id.* Probation determined that Johnson had three qualifying prior felony convictions: a 2015 Tennessee conviction for aggravated assault; a 2015 Tennessee conviction for the possession of marijuana with the intent to manufacture, sell, or distribute; and a 2018 Tennessee conviction for possession of marijuana with the intent to sell. *Id.* at ¶¶ 44, 45, 50 (Page ID #160–61, 163). Applying the career-offender enhancement, Probation recommended that Johnson's total offense level be calculated as 29, which, combined with his criminal history category of VI, resulted in a total Guidelines range of 271 to 308 months of imprisonment. *Id.* at ¶¶ 36, 55, 102 (Page ID #158–59, 164, 171).

Johnson's sentencing hearing was held on August 7, 2023. R. 84. At sentencing, Johnson raised a number of objections to Probation's calculation of his offense level and the resulting Guidelines range. R. 93 (Sent'g Tr. at 15) (Page ID #226). One of those objections was to the application of the career-offender enhancement. *Id.* Johnson argued that the enhancement should not apply because two out of the three of his prior offenses—the 2015 and 2018 Tennessee marijuana convictions—theoretically could have been for the possession of hemp, which no longer qualified as a controlled substance under either the federal or Tennessee drug schedules. *Id.*

According to Johnson, because the modern versions of the statutes are less inclusive, his prior marijuana offenses should not have been considered "controlled substance offenses" for the purposes of the enhancement. *Id.* at 15–17 (Page ID #226–28). Noting that this argument was foreclosed by our precedent, Johnson nevertheless presented the argument in order to preserve it for appellate review. *Id.* at 17 (Page ID #228). After discussing the issue at length, the district court overruled Johnson's objection to the applicability of the career-offender enhancement. *Id.* at 21 (Page ID #232).

Johnson also requested a variance to his calculated total Guidelines range of 271 to 308 months on the basis of his criminal history and characteristics. *Id.* at 34–35 (Page ID #245–46). Specifically, Johnson's counsel noted the strength of Johnson's familial support system, the trauma he went through in his youth, and his dedication to his children. *Id.* Counsel also made an argument regarding the need to reduce unwarranted sentencing disparities by varying downward to reflect the allegedly diminished seriousness of Johnson's previous marijuana-related convictions. *Id.* at 35–36 (Page ID #246–47). This argument extended into a lengthy discussion by defense counsel about changing views regarding marijuana, the legalization of marijuana in a number of jurisdictions, and the failure of Congress to amend the Guidelines to reflect these changes. *Id.* at 35–42 (Page ID #246–53). By contrast, the government emphasized the violent nature of the bank robbery and the fact that it involved a shootout; Johnson's criminal history beginning at age fifteen and extending through his young adulthood; and Johnson's repeated disciplinary infractions while in pretrial detention pending his sentencing. *Id.* at 26–31 (Page ID #237–42).

After taking a recess to consider the arguments made by both parties, *id.* at 54–55 (Page ID #265–66), the district court, having reviewed "the entire record and closely scrutinizing the 3553 factors as we're required to do," denied Johnson's request for a downward variance. *Id.* at 60 (Page ID #271). Specifically, the district court found that "the facts established here by a preponderance of the evidence . . . demonstrate that the defendant is dangerous" and "a danger to this community." *Id.* The district court also found that "the record reflects that [Johnson has] demonstrated a lack of respect for the law and the Courts by his conduct and by violating probation and by virtue of the numerous offenses committed while in custody" and that Johnson's prior periods of incarceration had failed to "adequately deter[] his criminal behavior." *Id.* The district court additionally noted the importance of imposing a sentence adequate not only to deter Johnson from committing future crimes "but also to send a message to [the] general public, a message of deterrence." *Id.* at 60–61 (Page ID #271–72). The district court concluded that a bottom-of-the-Guidelines range sentence of 271 months was "sufficient but not greater than necessary" to achieve the goals of sentencing. *Id.* at 60 (Page ID #271).

Johnson timely filed a notice of appeal on August 21, 2023. R. 87 (Notice of Appeal) (Page ID #198).

## II. DISCUSSION

### A. Standard of Review

Johnson raises three issues on appeal: (1) whether the district court erred in classifying his prior drug felony convictions as "controlled substance offenses" under the Sentencing Guidelines; (2) whether his 271-month sentence was substantively unreasonable; and (3) whether the rule of lenity should apply to reduce Johnson's sentence. We review de novo the district court's

determination that a prior conviction qualifies as a "controlled substance offense" under the Guidelines. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam). By contrast, we review substantive-reasonableness claims for an abuse of discretion. *United States v. Ruiz*, 777 F.3d 315, 319 (6th Cir. 2015).

## B. "Controlled Substance Offense" Classification

The first issue Johnson raises on appeal is whether his two prior Tennessee marijuana felony convictions qualify as predicate "controlled substance offenses" for the purposes of the career-offender enhancement under the Guidelines. In evaluating whether a conviction qualifies as a predicate offense for an enhancement, we employ a three-step categorical approach. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020). "Under this approach we look only to the elements of the criminalized conduct, not the defendant's actual conduct." *United States v. Clark*, 46 F.4th 404, 407–08 (6th Cir. 2022). We proceed by (1) identifying the conduct criminalized under the state law of conviction; (2) evaluating that conduct as defined under the Guidelines; and (3) overlaying the two and determining whether "the outer edges of the state law—often the 'least culpable conduct' that the law proscribes—extend past the guidelines' definition," in which case the conviction does not count as a predicate offense. *Garth*, 965 F.3d at 495. "[I]f, however, the boundaries of the state law and the guidelines' definition are coterminous, or the guidelines' definition sweeps more broadly, then the conviction counts" as a predicate offense. *Id.*

Johnson was twice convicted for possession of marijuana with intent to deliver or sell under Tennessee law. R. 81 (Final PSR at ¶¶ 45, 50) (Page ID #161, 163); Tenn. Code Ann. § 39-17-417. At the time of these convictions (2015 and 2018), both Tennessee and federal law defined "marijuana" as including hemp. Tenn. Code Ann. § 39-17-402(16) (2012); 21 U.S.C. § 802(16)

6

(2018). Since that time, both jurisdictions have amended their drug schedules to exclude hemp from the definition of "marijuana." Tenn. Code Ann. § 39-17-402(16)(C) (2019); 21 U.S.C. § 802(16)(B) (2018); *see also* Agriculture Improvement Act, Pub. L. No. 115-334, § 12619(a)(2), 132 Stat. 4490, 5018 (2018) (removing "hemp" from the definition of "marijuana" in the schedule of controlled substances). Employing the first step of the categorical approach, however, we look to the conduct criminalized by the state statute at the time of Johnson's state convictions, which included the possession of hemp.

Employing the second step of the categorical approach, we then look to the relevant conduct as defined in the Guidelines. For the career-offender enhancement to apply, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). The Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense[.]" U.S.S.G. § 4B1.2(b)(1). The Guidelines do not otherwise define the term "controlled substance offense."

It is at this step of the required analysis that Johnson argues the district court erred. According to Johnson, in determining whether his two prior marijuana-related offenses count as "controlled substance offenses" under the Guidelines for the purposes of the career-offender enhancement, we should look not to the state and federal drug schedules as they existed at the time of his state convictions but instead to the schedules as they existed at the time of his federal sentencing in the instant case, i.e., August 7, 2023. Appellant Br. at 15–16. Applying this

approach, the relevant drug schedules would exclude hemp from the definition of a "controlled substance" and neither of Johnson's state marijuana offenses would qualify as predicate offenses. *Id.* By contrast, the government argues that our precedent makes clear that we must look instead to the drug schedules as they existed at the time of Johnson's underlying state convictions. Appellee Br. at 7.

In *Clark*, we clearly stated that, although Circuits differ as to the applicable rule, "[w]e adopt a time-of-conviction rule." 46 F.4th at 408. In that case, we reviewed the sentence of an individual with two underlying Tennessee convictions for possessing marijuana with the intent to sell or deliver to whom the district court had applied the career-offender enhancement. *Id.* at 407. After analyzing the Guidelines' text, relevant caselaw, and prudential considerations, we held that, though the state and federal drug schedules had both since excised hemp from the definition of marijuana, "courts must define the term 'controlled substance offense' in the Guidelines with reference to the law in place at the time of the prior conviction at issue." *Id.* at 415. The same question of law is present here as in *Clark*, and thus we reach the same conclusion. The time-of-conviction rule[1] applies.

Johnson devotes a significant portion of his briefing arguing that *Clark* was wrongly decided and criticizing its internal logic. Appellant Br. at 12, 23–25; Reply Br. at 5. But "we are duty-bound to apply governing precedent." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 571 (6th Cir. 2019). And we have done so in a number of cases subsequent to *Clark*. *See United States*

---

[1]To be clear, in the context of this rule, "time-of-conviction" refers to the time of a defendant's conviction on the prior crime or crimes being counted as qualifying convictions for the purposes of the career-offender enhancement. So, in the context of this case, "time-of-conviction" refers to the dates on which Johnson was convicted of his previous felony offenses—the possession of marijuana with the intent to distribute under Tennessee law—i.e., 2015 and 2018.

*v. Wilkes*, 78 F.4th 272, 278 (6th Cir. 2023); *United States v. Long*, No. 22-6041, 2023 WL 5242509, at *1 (6th Cir. July 28, 2023) (order); *United States v. Rogers*, No. 21-6134, 2023 WL 152517, at *4 (6th Cir. Jan. 11, 2023).

Finally, the Supreme Court recently decided a case that lends support to our holding in *Clark*. In *Brown v. United States*, the Court took up the question of whether courts should look to the federal drug schedules in place at the time of a prior conviction or at the time of sentencing in determining whether a previous state drug conviction qualifies as an Armed Career Criminal Act (ACCA) predicate offense. 602 U.S. 101, 107–08 (2024). The Court held that, in the context of the ACCA, a time-of-conviction rule applies. *Id.* at 115. In so holding, the Court noted its previous holding that the argument that an offense should no longer be treated as "serious" following a change in state law was "absurd" and that "[t]he 'subsequent chang[e] in state law' did not 'erase [the] earlier conviction.'" *Id.* (quoting *McNeill v. United States*, 563 U.S. 816, 822–23 (2011)).

Johnson argues that *Brown* is distinguishable from the case at bar because *Brown* involved the interpretation of the ACCA, not the Sentencing Guidelines. D. 32 (Appellant 28(j) Letter at 1–2). Citing footnotes in both the majority opinion and dissent, Johnson argues that the Supreme Court's decision in *Brown* instead casts doubt upon our decision in *Clark* by noting that "Congress has expressly directed courts to apply the Guidelines 'in effect on the date the defendant is sentenced.'" *Id.* (citing *Brown*, 602 U.S. at 120 n.7 (majority); 127 n.1 (Jackson, J., dissenting)). Johnson's citation to these footnotes misunderstands their meaning. District courts are indeed required to apply the Guidelines as they exist at the time of a federal criminal defendant's sentencing, and the district court did so in this case. But Congress has provided no guidance as to whether courts are to look to the drug schedules in place at the time of sentencing for the instant

9

offense or at the time of the prior conviction(s) in determining whether a previous offense qualifies as a predicate offense for the purposes of the career-offender enhancement. That lack of guidance has resulted in a circuit split on the issue. Our circuit has determined that a time-of-conviction rule applies. And nothing that the Court stated in *Brown* casts doubt upon that determination. In fact, the reasoning that the Court employs in *Brown* bolsters the notion that a time-of-conviction rule comports with precedent and statutory context. *Id.* at 111–16.

Under the time-of-conviction rule, we look to the drug schedules in place at the time of Johnson's prior convictions, i.e., 2015 and 2018. *Clark*, 46 F.4th at 415. Both the federal and Tennessee drug schedules included hemp within the definition of marijuana at those times. Both convictions therefore qualify as controlled-substance offenses under U.S.S.G. § 4B1.1(a), even if we assume that Johnson possessed hemp. The district court did not err in applying the career-offender enhancement.

## C. Substantive Reasonableness

Johnson also argues that his 271-month sentence is substantively unreasonable. Appellant Br. at 26. "For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes' of § 3553(a)." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). On the other hand, "[a] sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

10

As an initial matter, a sentence falling within the Guidelines range is presumed to be reasonable. *United States v. Parrish*¸ 915 F.3d 1043, 1049 (6th Cir. 2019); *see also Conatser*, 514 F.3d at 520 ("A properly calculated advisory guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors."). Here, Johnson's advisory Guidelines range was calculated as 271 to 308 months of imprisonment. R. 93 (Sent'g Tr. at 8) (Page ID #219). The district court sentenced Johnson to 271 months, the lowest end of the applicable Guidelines range. *Id.* at 60 (Page ID #271). Johnson's sentence is thus presumptively reasonable.

We have held that "[t]he sentencing judge may not presume that the guidelines range is reasonable, but must consider all of the relevant § 3553(a) factors and impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2)." *Conatser*, 514 F.3d at 520 (internal quotations omitted). "Section 3553(a) mandates that a district court imposing a sentence consider the defendant's guideline range; the nature of the offense; the characteristics of the defendant; the need to deter criminal conduct, protect the public, and provide the defendant with appropriate treatment; and the need to avoid sentencing disparities with defendants who have been found guilty of the same conduct and who have similar criminal histories." *Curry*, 536 F.3d at 573–74.

Here, after hearing arguments from both parties, the district court considered the § 3553(a) factors and emphasized those that it found most relevant to Johnson's case, including the nature of the offense, Johnson's criminal history, and the need to protect the public and deter Johnson from committing future crimes. R. 93 (Sent'g Tr. at 60–61) (Page ID #271–72). Specifically, the

11

district court emphasized the violent nature of the crime of conviction, including the fact that it involved a shootout; Johnson's "demonstrated . . . lack of respect for the law and the Courts by his conduct and by violating probation and by virtue of the numerous offenses committed while in custody"; and the need to deter both Johnson himself and others from committing similar crimes. *Id.* Upon considering the factors, along with the arguments for leniency presented by defense counsel, the district court determined that a sentence at the bottom of the Guidelines range of 271 months' imprisonment was reasonable. *Id.* at 60 (Page ID #271).

Johnson argues that the district court "put an unreasonable amount of weight" on certain of the § 3553(a) factors—specifically, his recidivism risk and potential danger to the community—at the expense of others, including his youth at the time of his marijuana convictions and the life changes he has made since his arrest for the instant offense. Appellant Br. at 26–28. In so arguing, Johnson essentially reiterates many of the arguments made by his trial counsel at sentencing in favor of a downward variance. But the record at sentencing does not reflect that the district court gave unreasonable weight to any one factor; instead, it reflects the district court's careful consideration of a number of factors that it found relevant. And the district court's decision to weigh certain factors, including Johnson's lengthy criminal history, the seriousness of the instant offense, and the risk of recidivism, more than others was reasonable. *See United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022) (stating that "a sentence is not necessarily substantively unreasonable because a court places greater weight on some factors than others"); *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (same).

With the understanding that Johnson's within-Guidelines sentence is entitled to a presumption of reasonableness, we conclude that the district court did not abuse its discretion by

imposing a 271-month sentence. After considering several of the § 3553(a) factors, including Johnson's arguments about his age at the time of his previous offenses and changes to his life since, as well as the government's arguments regarding the seriousness of the offense and the relevance of Johnson's criminal history, the district court concluded that a sentence at the lowest end of Johnson's Guidelines range was sufficient but not greater than necessary to achieve the aims of sentencing. That conclusion was substantively reasonable.

## D. The Rule of Lenity

Finally, Johnson engages in a lengthy discussion of why the rule of lenity should apply to the case at bar, arguing that the "plethora of ambiguity" involved in the question of whether Johnson's prior marijuana convictions should qualify as controlled substance offenses under the career-offender enhancement and that the "social ambiguity concerning marijuana" warrants the exercise of lenity. Appellant Br. at 45. This argument is, in essence, a policy argument as to the role of the federal judiciary versus Congress and changing views regarding marijuana.

We reviewed a similar argument in *Clark*. 46 F.4th at 415. There, we noted that "the rule of lenity plays 'a very limited role,' applying 'only when after seizing everything from which aid can be derived, the statute is still grievously ambiguous.'" *Id.* (quoting *Wooden v. United States*, 595 U.S. 360, 377 (2022) (Kavanaugh, J., concurring); *see also Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (explaining that "[t]o invoke the rule [of lenity], we must conclude that there is a 'grievous ambiguity or uncertainty' in the statute" such that the court "can make 'no more than a guess as to what Congress intended.'") (first quoting *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994); then quoting *United States v. Wells*, 519 U.S. 482, 499 (1997)). We concluded that, "[b]ecause a reasoned interpretation of the text can be reached by 'exhaust[ing] all

the tools of statutory interpretation,' we need not rely on the rule of lenity here." *Clark*, 46 F.4th at 415 (quoting *Wooden*, 595 U.S. at 377 (Kavanaugh, J., concurring)).

Here, as in *Clark*, the career-offender enhancement provision is not so ambiguous as to require the application of the rule of lenity. And while Johnson may not agree with our interpretation of the provision's meaning, such disagreement is inadequate to require the application of lenity. Furthermore, any argument that Johnson was not on notice that his previous convictions qualified as controlled substance offenses for the purposes of the career offender enhancement is vitiated by the fact of our existing precedent on the issue. *Id.* Under these circumstances, the rule of lenity does not apply.

## III. CONCLUSION

Dekeilon Johnson was convicted of state offenses involving the possession and sale of marijuana under a broader statutory framework that was more inclusive (by including hemp in the definition of marijuana) than that in existence at the time of his sentencing for bank robbery. But we apply a time-of-conviction rule, looking to the time of a defendant's conviction(s) on previous crimes, not a time-of-sentencing rule. The district court therefore properly concluded that Johnson's prior marijuana convictions under state law qualified as "controlled substance offenses" for the purposes of the career-offender enhancement. And Johnson's 271-month sentence, a sentence at the lowest end of his recommended Guidelines range, is not substantively unreasonable.

We **AFFIRM** the judgment of the district court.